IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

GUY F. COBB,

   Plaintiff,

v.               Case 2:11-CV-02274-STA-cgc

FEDEX EXPRESS, INC.,
MEMPHIS-SHELBY COUNTY
AIRPORT AUTHORITY,
CLIFFORD RUSSELL SMITH,
and KIMLEY-HORN & ASSOCIATES,

   Defendants.

---

REPORT AND RECOMMENDATION ON IN FORMA PAUPERIS SCREENING
PURSUANT TO 28 U.S.C. § 1915

---

On March 27, 2013, the District Court advised that this case may require screening under 28 U.S.C. § 1915(e)(2)(B) ("Section 1915") if Plaintiff desired to continue proceeding in forma pauperis.[1] (D.E. #13). The record reflects that Plaintiff has elected to do so, and the Section 1915

---

[1] Following the filing of Plaintiff's Complaint, he was granted leave to proceed in forma pauperis. (D.E. #4). On May 17, 2012, Plaintiff notified the District Court that he had gained full-time employment as of April 15, 2012 and sought to no longer proceed in forma pauperis. Plaintiff further advised that he was "now able to pay the filing fee which was waived" and sought the District Court's guidance "as to whether there are any specific requirements for submitting a waived filing fee."
  The District Court advised that the case should be screened pursuant to 28 U.S.C. § 1915(e)(2)(B) unless Plaintiff voluntarily paid the previously waived filing fee after a change in his employment status. The District Court ordered Plaintiff to pay this fee, if he elected to do so, within twenty-eight days of its March 27, 2013 Order. (D.E. #13). There is no record that Plaintiff elected to do so, and thus the Magistrate Judge will conduct the screening as anticipated by the District Court's Order.

1

screening has been referred to the United States Magistrate Judge for Report & Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)-(c). (D.E. #14). For the reasons set forth herein, the Magistrate Judge recommends that Plaintiff's case be dismissed pursuant to Section 1915 for lack of subject matter jurisdiction.

**I. Background**

On April 12, 2011, Plaintiff filed a Complaint for Damages, Declaratory, and Injunctive Relief. Plaintiff alleges that he was employed by FedEx Services, Inc. ("FedEx Services") as a Business Continuity and Disaster Recovery professional. Plaintiff alleges that, during the course of his duties in 2005, he discovered structural defects and damages on Runway 9/27 at the Memphis International Airport and in the Hurricane Creek Tunnel that runs beneath the runway, in part due to a September 19, 2004 airline accident. Plaintiff believed that this runway was essential to FedEx's[2] Memphis operations because every inbound FedEx flight must either land on Runway 9/27 or taxi across it. Plaintiff became further concerned about the potential impact of a mid- to large-scale earthquake on the stability of Runway 9/27 and the Hurricane Creek Tunnel and feared that, under such circumstances, the runway could collapse into the tunnel.

Based upon his safety concerns, Plaintiff began attempting to alert various individuals within FedEx and MSCAA starting in 2006. To set forth the substance of his concerns, he prepared a report entitled *Enterprise Vulnerability Study 001—Hurricane Creek—Memphis International Airport and FedEx Superhub* ("ESV-001"). Plaintiff alleges that FedEx advised him on several

---

[2] At various times in Plaintiff's Complaint and in the exhibits in the record, there are general references to "FedEx" without any designation of a particular entity within FedEx's corporate structure. The Magistrate Judge will utilize this general term for the business as it is used in the pleadings and exhibits.

2

occasions as to how he should and should not proceed with respect to these concerns. Specifically, Plaintiff alleges that FedEx instructed him not to provide MSCAA any of the photographs he had taken, to shred all of the EVS-001 documents, and to not allow this information to "get out into the public." Plaintiff does not state whether or not he shared his photographs with MSCAA but states that, while he did destroy copies of the ESV-001, he maintained "all of his original documentation, both physical and digital." Plaintiff also continued his attempts to notify individuals with FedEx and MSCAA of his fears throughout 2006, 2007, and 2008.

On November 28, 2008, MSCAA announced that Runway 9/27 would be "completely replaced." Plaintiff alleges that there were no reports, other than his ESV–001, that would explain any "need for Runway 9/27 to be replaced." To finance the replacement, Plaintiff alleges that MSCAA applied for and received a $45 million revolving credit line from Regions Bank. Plaintiff asserts that this credit line is "illegal" because MSCAA has "no authority to apply for or draw upon such a large revolving credit line" based upon the terms of its Financial Statement. Plaintiff further asserts that MSCAA was required to finance the construction with bonds but believes that MSCAA and FedEx made the decision to replace Runway 9/27 "so quickly there was no time to issue bonds for the project."

On January 28, 2009, MSCAA awarded the construction contract for Runway 9/27 to Ajax Pavement and Kimley-Horn & Associates ("Kimley-Horn") was designated as the "primary project management firm." Following this announcement, Plaintiff continued to contact FedEx officials about his concerns about the construction, including whether "additional construction has been funded to reinforce the Hurricane Creek tunnel." The construction on Runway 9/27 began on March 1, 2009, and Plaintiff contacted FedEx officials suggesting that they "contact the Department of

Homeland Security to fund the installation of security cameras in the tunnel." Plaintiff was notified that there was no additional funding to reinforce the Hurricane Creek tunnel, and the construction on Runway 9/27 was completed on November 1, 2009. On November 13, 2009, Plaintiff was terminated from FedEx Services for "Unacceptable Conduct."

Following his termination until on or about April 14, 2009, Plaintiff continued to contact MSCAA officials and other government agencies and continued to publicly discuss his concerns about the safety of Runway 9/27 and the Hurricane Creek tunnel. On April 15, 2010, Plaintiff posted an online message "to all pilots who use Runway 9/27 at Memphis International Airport, warning them of the safety issue to the damaged tunnel holding up the new runway," which stated as follows:

> This is a warning to all FedEx pilots who land at Memphis International on Runway 9/27. My name is Guy Cobb and I am a former FedEx Business Continuity and Disaster Recovery Coordinator. In 2006 I discovered a defect with Runway 9/27 and presented it to FedEx Express Management. Immediately following the meeting I was told not to let this information get out into the public and to shred my documentation which I did but kept my original files. In November of 2008 I re-submitted my findings to . . . FedEx Express. Three weeks later the Memphis Airport Authority announced that the 65 year old runway would be completely replaced. Most of you may not realize that Runway 9/27 has a massive tunnel running directly beneath it. The defect is specific to this tunnel and [its] ability to support the runway above it. Because [FedEx] Express fast tracked the new runway to start in March of 2010 and had to be completed by December they made no provisions to reinforce the Hurricane Creek tunnel. I have asked the Memphis Airport Authority to allow for a public inspection of the tunnel for the past four months but they have refused. ALPA, [FedEx] Express, the [MSCAA] and the FAA all know about the defect. All I am asking is that all of you read my Hurricane Creek Master Document on my documentation website and decide for yourselves. My documentation includes all structural diagrams, engineering studies and photographs of the tunnel and runway. The site address is here:
>
> www.guycobb.com/coverup.htm
>
> Thank you and be safe.

On April 15, 2010, Smith posted his own response to Plaintiff's post on the Airline Pilot Central website under the username "Cliffy170," which states as follows:

> I won't even dignify quoting his post in my reply.
>
> First, Mr. Cobb was fired from FedEx for violating the terms of his employee shipping account. He is no longer an employee for the company.
>
> Second, I applaud Mr. Cobb on his outstanding accomplishments and thoroughness in which he presents his case, although his conspiracy theory-esque explanation of his vehicle mishaps are a misguided attempt to cast blame on a "secret" group tied to his former employer.
>
> Third, [t]he FedEx and MIAC engineering departments have all reviewed Mr. Cobb's reports and have concluded that there is no threat to RWY 09/27 operations nor is there a threat to commercial or private aircraft.
>
> —The bounded landing, go-around, and subsequent tailstrike was on Rwy 09. According to pilot testimony, the aircraft was airborne again just past the extended centerline of Rwy 18L/36R. The aircraft touched down approx. 1100 feet east of the approach end of Rwy 09; the minuscule slope of the runway was not even in the touchdown zone let alone become a contributing factor in causing the aircraft to "pitch up"
> —The superhub facility is also situated over the tunnel. The weight of the structure and supporting sort equipment, vehicles, and freight pallets are much higher than the footprint of a landing aircraft. The floors show no cracking or buckling, yet the thickness of the concrete floors are rated at a lighter load limit.
> —The tailway "victor" and "300-series gate taxiways" show no signs of damage above the tunnel, while their use is much higher than the runway.
>
> Third, Mr. Cobb has pointed out that his pleas for media attention have fallen on deaf ears; and, now feels that an airline website is an appropriate forum to present his case. The motive is clear: to instill panic and create doubt as to the safety of a "proven sound structure."
>
> Give this the attention it deserves—another joke, a conspiracy theory nutcase wanting to draw attention to himself. Jeep wheels? Bulldozers? Cracking concrete? Sagging ceilings? Seeping walls? I imagine Mr. Cobb's home office to be cluttered with the "Official documents" and "tattered blueprints" that he uses to support his claims of impending apocalypse. Mr. Cobb is just another disgruntled whistleblower former employee intent on exacting revenge on the company that terminated him.

On May 20, 2010, Plaintiff alleges that he became aware that MSCAA had "commissioned

5

a $70,000 study by Defendant Kimley-Horn & Associates which is a 'structural inspection and analysis of the Hurricane Creek Box Culvert.'" Plaintiff alleges that Kimley-Horn "was an existing contractor for Defendant MSCAA and already on MSCAA's payroll so they were not an impartial third party engineering firm." Plaintiff alleges that, also on May 20, 2010, MSCAA held a board meeting where he was permitted to speak but was not listed on the meeting agenda or public minutes. Plaintiff alleges that he was "asked not to discuss, refute, or ask questions" of Kimley-Horn's representatives and was questioned about his educational background. Plaintiff states that these were attempts to "further deflect attention away from what the Plaintiff was led to believe would be an open discussion about the damaged tunnel walls and runway." On May 22, 2010, Plaintiff requested a copy of the Kimley-Horn study, which he was provided to him on May 25, 2010. On June 3, 2010, Plaintiff published a response letter to each of MSCAA's Commissioners.

Based upon these allegations, Plaintiff's Complaint contains the following claims: Count I for Libel and Damages against Smith; Count II for Conspiracy to Commit Libel and Damages against Smith and FedEx Express; Count III for Conspiracy and Damages against MSCAA and Kimley-Horn; Count IV for Conspiracy and Damages against MSCAA and FedEx Express; Count V for injunctive relief against MSCAA; and, Count VI for declaratory relief against Smith.

**II. Proposed Legal Standard**

Pursuant to 28 U.S.C. § 1915, in proceedings in forma pauperis, notwithstanding any filing fee, or any portion thereof, that may have been paid, the Court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue or that the action or appeal is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

6

Pleadings and documents filed by pro se litigants are to be "liberally construed," and a "pro se complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)). The basic pleading essentials are not abrogated in pro se cases. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) A pro se complaint must still "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Barnett v. Luttrell*, 414 Fed. Appx. 784, 786 (6th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678) (internal quotations and emphasis omitted). District Courts "have no obligation to act as counsel or paralegal" to pro se litigants. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). District Courts are also not "required to create" a pro se litigant's claim for him. *Payne v. Secretary of Treasury*, 73 Fed. Appx. 836, 837 (6th Cir. 2003).

### III. Proposed Conclusions of Law

A threshold question in every federal case is whether the Court has subject matter jurisdiction. In the instant case, Plaintiff's Complaint states that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, "in that there are parties who are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." (Pl.'s Compl. ¶ 10).

Section 1332 provides for subject matter jurisdiction on the basis of diversity of citizenship and amount in controversy, in pertinent part, that "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive

7

of interests and costs," and is between "citizens of different states."  28 U.S.C. § 1332(a)(1).  "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same state."  *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 388 (1998) (internal quotations and citations omitted).

Plaintiff states that he resides in Cordova, Tennessee.  Plaintiff states that Smith resides in Olive Branch, Mississippi.  However, Plaintiff states that FedEx Express has its principal place of business in Memphis, Tennessee; that MSCAA is located in Memphis, Tennessee; and, that Kimley-Horn has its principal place of business in Memphis, Tennessee.  According to Plaintiff's allegations, there is not complete diversity of citizenship between himself and all defendants, as he resides in the same state as all defendants except for one.  Plaintiff's allegation that "there are parties who are citizens of different states" is not sufficient for total diversity.  Thus, the Magistrate Judge recommends that this Court does not have diversity jurisdiction pursuant to Section 1332.

Further, although Plaintiff does not contend that this Court has federal question jurisdiction, the Court will briefly address this issue.  A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff's Complaint contains claims of libel, conspiracy, and other relief based upon state law.  There is no allegation in Plaintiff's Complaint that arises under federal law.  Accordingly, the Magistrate Judge recommends that this Court does not have federal question jurisdiction pursuant to Section 1331.

The Sixth Circuit has held that, when there is "no basis for federal jurisdiction on the face of [the plaintiff's] complaint," the district court may properly dismiss an action as frivolous pursuant

8

to Section 1915.[3]  *Carlock v. Williams*, 182 F.3d 916 (6th Cir. 1999). Accordingly, the Magistrate Judge recommends that Plaintiff's Complaint be dismissed as frivolous pursuant to Section 1915.

**IV. Conclusion**

For the reasons set forth herein, the Magistrate Judge recommends that Plaintiff's Complaint be dismissed.

**DATED** this 23rd day of May, 2013.

       s/ Charmiane G. Claxton
       CHARMIANE G. CLAXTON
       UNITED STATES MAGISTRATE JUDGE


**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[3] When there is no subject matter jurisdiction, a district court must also dismiss the action sua sponte pursuant to Rule 12(h)(3). Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Carlock*, 182 F.3d at *1-*2. Accordingly, the Magistrate Judge also recommends that Plaintiff's Complaint be dismissed pursuant to Rule 12(h)(3).